# June Term, 1896.

## WHEELING.

STATE *v.* MILLER *et al.*

Submitted January 20, 1896—Decided June 5, 1896.

LASCIVIOUS COHABITATION—EVIDENCE.

> To constitute the offense of lewd and lascivious association and cohabitation, under section 7, chapter 149, Code 1891, it must be proved that the parties cohabited together; that is, lived together in the same house as man and wife. Proof of occasional acts of illicit intercourse is not sufficient.

CAMPBELL & HOLT and H. C. DUNCAN for plaintiffs in error. H. C. DUNCAN cited 21 W. Va. 767, 770; 80 Va. 18; 12 Iowa, 499-586; 5 Rand. 634.

ATTORNEY-GENERAL, T. S. RILEY, for the State, cited 26 W. Va. 338.

BRANNON, JUDGE :

Charles H. Miller and Susan Hatton, having been convicted in the Circuit Court of Lincoln on an indictment for lewd and lascivious cohabitation, appeal the case here.

No evidence was given but that of the state. Miller owned land, and was engaged in the work of clearing it, employing a number of hands; and he employed Susan

Hatton, who had been living in that neighborhood, and other girls, to do housework and cook for the hands, paying her fixed pay. She came there in February, and in September gave birth to a child. There was a small cabin of one room in which all who did sleep there slept. It had two beds, one occupied by Susan Hatton and another hired woman, and the other by Miller and Gus Clay, or at times by some other hand. Clay says he never knew Miller to get out of bed. We can say that always one bed was occupied by Susan Hatton and a hired girl, the other by Miller and a male employe, and sometimes other male employes. It does not appear that Susan Hatton and Miller ever passed a day or night alone in the house. It was the common dwelling place of all, and there were a number there. The child must have been begotten before Susan Hatton came to the house. She seemed to take the lead in managing work at the house, and was told by Miller to hire a girl to help her, and did so. It is proven that on one occasion Miller lay down on the bed with Susan Hatton with his clothes on, but this was in open day, and a hired girl was in and out of the room all the time. On another occasion, before bedtime, he lay down on her bed, but it is not proven that she was on the bed, and it is proven that Susan Ann Eplin and Gus Clay were in the room all the time. No sexual intercourse was proven, unless we can say these circumstances show it. Not a bit of evidence goes to show that he was father of the child, or that she imputed it to him.

Could the defendants be convicted of fornication on this evidence? I think not. If they could, that would not show them guilty of the offense of which they are indicted, for transient acts of intercourse, though they may be items of evidence going, with other circumstances, to show lewd and lascivious cohabitation, do not, by any means, alone establish it. A separate section of the Code from that under which this indictment was found applies to that. The statute says "lewdly and lasciviously associate and cohabit together." Code 1891, c. 149 s. 7. Webster gives the verb "cohabit" two meanings, one, "to inhabit or reside in company, or in the same place or country." Of

course, the sense of the word in our statute is not this sense. Webster's second definition is "to live together as husband and wife." Plainly, this is the meaning of the word in our statute. Black's Law Dictionary, among several meanings, gives, as its first, "to live together as husband and wife." So does Bouvier. That this is the meaning of the word in our statute is apparent from the opinion by Judge Wood in *State* v. *Foster*, 21 W. Va. 767. And, on literally the same statute, it has been twice held in Virginia that, "to constitute the offense, it is essential that it be proved that the parties cohabit together—that is to live together in the same house as man and wife. Proof of occasional acts of incontinence merely is not sufficient." *Pruner and Clark's Case*, 82 Va. 116. They must appear and act to the world as man and wife, without being married. The Iowa statute is "lewdly and lasciviously associate and cohabit together." Revision 1860 § 4351. In *State* v. *Marvin*, 12 Iowa, 499, the parties, just as in this case, lived in the same house as master and servant, and on two occasions, the defendant was seen getting out of bed with the female defendant. The court said: " 'Cohabiting' means more than living together in the same house, and 'lewdly and lasciviously' means more than occasional acts of intercourse." In *Searls* v. *People*, 13 Ill. 597, the court said: "The parties must 'dwell together openly and notoriously in illicit intimacy, upon terms as if the conjugal relations existed between them. In other words they must cohabit together. There must be an habitual illicit intercourse between them. The object of the statute was to prohibit the public scandal and disgrace of the living together of persons of opposite sexes notoriously in illicit intimacy, which outrages public decency, having a demoralizing and debasing influence on society." In Massachusetts the statute uses the same words as ours, and such was its construction in *Com.* v. *Calef*, 10 Mass. 153. So say Bish. St. Crimes, § 712; Whart. Cr. Law, § 1747. See *Carotti* v. *State*, 42 Miss. 334.

The evidence is inadequate. This is not a case where a verdict is set aside as contrary to the evidence, but is one where the verdict is without sufficient evidence. This dis-

tinction is made in Grayson's Case, 6 Grat. 712. There is a plain distinction. The act of the court is less delicate where, as in this case, taking all the evidence to be true, and giving it force to prove all that it can fairly be said to prove, the case is not made out. The case of *State* v. *Foster*, 21 W. Va. 767, was almost identical with this in character, unless it was stronger against the defendant, and the Court held the evidence short of proving the offense.

Judgment reversed. Verdict set aside. New trial awarded.