# CHARLESTON.

STATE v. CHAFIN.

Submitted March 21, 1916.   Decided April 4, 1916.

1. INDICTMENT AND INFORMATION—*Requisites of Accusation—Following Language of Statute.*

   An indictment for a statutory crime is sufficient if it charges it in the language of the statute.   (p. 140).

2. CRIMINAL LAW—*Trial—Waiver of Error.*

   By introducing his own evidence, after the court has overruled his motion to strike out plaintiff's evidence, a defendant waives the error, if any, in the court's ruling.   (p. 141).

3. SAME—*Schools and School Districts—Examination of Teachers—Criminal Prosecution—Evidence.*

   Proof of facts and circumstances tending to arouse suspicion, but which do not prove the actual commission of the crime charged, will not sustain a verdict of guilty.   (p. 141).

Error to Circuit Court, Jackson County.

John Chafin was convicted of receiving help in a teachers' examination, and brings error.

*Reversed, and a new trial awarded.*

*T. J. Sayre* and *Stone & Wolfe,* for plaintiff in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

WILLIAMS, PRESIDENT:

Defendant was convicted of receiving help in a teachers' examination, adjudged to pay a fine of $10.00, sentenced to confinement in the county jail for a period of ten days and to work upon the public roads of the county during his term of confinement; and he brings error.

He complains of the overruling of his demurrer to the indictment.   Omitting the formal part and the matter alleged by way of inducement, the indictment charges that: "On the said 4th day of June, 1914, in the said county of Jackson, one John Chafin became and was an applicant for a teacher's certificate and entered said examination for the purposes of ob-

taining such teacher's certificate at which said examination, on the day and at the place aforesaid, the said John Chafin did willfully, fraudulently and unlawfully receive help in and at said examination, against the peace and dignity of the State.''

Sec. 88, ch. 45, ser. sec. 2141, Code 1913, is in part as follows: ''If any person intentionally break or attempt to break the seal of a package containing questions for examination or have any of the questions in his possession without authority of law or in any way make any change, alterations, erasures or substitutions in the manuscripts during or after the examination or attempt to pass any such examination under an assumed name, give or receive help in an examination, he shall be guilty of a misdemeanor and upon conviction thereof be fined not to exceed fifty dollars and confined in jail not less than ten days.''

Numerous offenses are created by the statute. They are mentioned disjunctively. Defendant is charged with only one of them, that of receiving help. The indictment charges it in the language of the statute, and that is a proper manner of averring a statutory offense. *State* v. *Jones*, 53 W. Va. 613; and *Helfrick* v. *Commonwealth*, 29 Grat. 844.

His next assignment is, that the court erroneously overruled his motion to strike out the State's evidence and direct the jury to return a verdict of not guilty. This error is unavailing, since defendant waived it by introducing his own evidence, after his motion was overruled. If he had desired to test the correctness of the court's ruling in that respect, he should have rested his case on his motion. *Dancer* v. *Dorr*, 72 W. Va. 430; *Ewart* v. *Fuel Co.*, 68 W. Va. 10; and *Fuller* v. *Mining Co.*, 64 W. Va. 437.

He complains of overruling his motion to set aside the verdict and grant him a new trial. Consideration of this ruling requires consideration of the evidence. If there is no evidence to support the verdict, or if it is plainly against the great weight of evidence, this court will not hesitate to reverse the action of the lower court. *McDermitt* v. *Forbes*, 73 W. Va. 240; *Booth* v. *Camden Interstate Ry. Co.*, 68 W. Va. 674; and 10 Encyc. Dig. Va. & W. Va. Cases, 453. It is proven, and

admitted by defendant to be true, that, while the examination was in progress, and before the test questions on the subject of English Grammar had been distributed among the applicants for teachers' certificates, and before the package containing those questions had been opened or the seal on it broken, answers thereto, in defendant's handwriting, were found in his desk. He swore he received them by mail, a day or two before, and did not know where they came from or who sent them to him; that they were in manuscript when he received them, and he copied them on other paper, but did not know why he did it, or why he had them with him at the place of examination; that it was not his purpose to take the examination on grammar, because he had taken the teachers' examination in April of that year, and had received a No. 2 certificate, which contained grades of 100 on two subjects or branches, and a grammar grade ranging somewhere in the 80's or 90's, but had forgotten the exact figures; and that he had not enrolled, at the June examination, for the purpose of being examined on the subject of grammar. By way of explanation, we should say that an applicant for a teacher's certificate is examined on a number of subjects, and the grade of his certificate depends on his general average on all the subjects, provided his grade does not fall below a fixed percent, on any subject. If he is not satisfied with the grades received at one examination on any one or more subjects, he may enter for re-examination on those subjects at the next public examination, and if his second grading is better than his first, he is entitled to a higher grade certificate, provided he has thus sufficiently increased his general average. The test questions are prepared and printed, under the supervision of the State Superintendent's office; and the requisite number of copies for use in the examinations to be held in the various counties of the State, are put up in sealed packages and transmitted, a day or two before the examination begins, to the several county superintendents. At the commencement of the examination the questions pertaining to two or three subjects are opened and distributed, a few at a time, to the teachers. They are required to write down the answers thereto, and hand in their manuscripts before receiving additional questions, a certain

amount of time being allotted to each subject. Two days are required for an examination on all the subjects. It is proven that the package of grammar questions had not been opened before the answers thereto were found in defendant's desk. That those questions were known to the party who furnished defendant with the answers thereto, is evident from their responsive character and corresponding orderly arrangement. But how that party got hold of the questions does not appear, nor is it material, for purposes of the present case, to inquire. Defendant had taken the examination on the sub- ject of physiology, and had passed his manuscript to the examiners, before the answers to the grammar questions were discovered in his possession. Defendant swears his purpose was, in enrolling for the June examination, to try to get a No. 1 certificate, instead of the No. 2 which he then held. He was not examined on grammar; and there is no evidence that he had in his possession answers to questions on any other subject; or that he received help in his examination on any subject or branch, on which he was then actually examined. His possession of a manuscript copy of answers to grammar questions, is strongly indicative of his purpose to make use of it, provided he had been examined on grammar. But, not being examined on that subject, the answers were not helpful to him in that examination; nor does his possession of them prove he received help on other branches. But his conduct was reprehensible, to say the least, and indicates a will to violate the law; but there is no proof of an actual violation. Defendant is young and was doubtless ambitious to obtain a high grade certificate, a laudable ambition, but no justification or excuse for crime; and it is to be hoped that, by upright conduct in the future, he may be able to erase from his character the stain which his suspicious behavior has cast upon it. A good moral character is a valuable asset in any profession or avocation, and one of the indispensable legal requirements of a school teacher.

To sustain the indictment it was necessary to prove the actual commission of the wrong, not simply a purpose to commit it. ''Proof of facts which tend only to arouse suspicion of guilt, but which do not prove the offense charged, are not

sufficient.'' *State* v. *White,* 66 W. Va. 45. Plaintiff was indicted for receiving help in the examination, and the evidence does not sustain the charge.

The judgment will be reversed, the verdict set aside and a new trial awarded.

*Reversed, and new trial awarded.*